Good morning, Your Honors. My name is Mark Poe. My firm tried this case nine years ago, and now with co-counsel, we represent Trendsetter on this third appeal. I intend to reserve five minutes for rebuttal, and I will keep my eye on the clock. I want to cover three topics. First, I want to explain how the district court erred by maintaining $10 million in prevailing party fees to Swisher, the losing party on the contract claims. Next, I want to persuade you that where a litigant has identified multiple bases for sanctions based on a single set of facts, that it needs to tee them up for decision in one final judgment so that they can be decided in one appeal. Last, I want to emphasize that under the simple rule for allocating the dividing line between pre- and post-judgment interest, both AT&T and Planned Parenthood simply require the allocation that, quote, more fully compensates the prevailing party. Here there's no question that Trendsetter is a prevailing party on the contract claims. It says so right in the judgment. This is at ER3. Beginning with the fees issue, Swisher apparently concedes that there's never been a case in the history of any jurisdiction where a losing party has been allowed to keep a prevailing party fee award after an appellate reversal of fortune. And if we take a step back, I think there can be no question as to whether if we had separately appealed the fees award in 2020, that it would have been reversed when the contract judgment was reversed. So the question then is why we didn't. And there are two reasons why. First, we relied on California Medical Association v. Shalala's rule that a litigant, and I'm quoting, preserves its challenge to the fee award by appealing the merits judgment on which it was based. And therefore, again quoting, a separate appeal of the fee award would have been a meaningless formality. Of course, as we've explained in our briefs, the Florida substantive law that governs this fees provision is exactly identical, Travelers v. Harrington and the other cases we cited. I think that everything you're saying is true, but the district court here found that Swisher could continue to maintain the fee award because the breach of contract claim was only not dismissed due to a technicality that it happened to be final earlier than the antitrust claim and therefore the rules for a new trial didn't apply to it. Well, so that's true, but the issue is that, well, for example, we were awarded prevailing party fees award, and the only way under this fees provision that we could be awarded prevailing parties fees award is a finding that Swisher had defaulted under its obligations. And I'll remind you that the fees provision says nothing about who received X number of damages. It's only whether one party defaulted or whether Swisher proved that it hadn't defaulted. There has never been any question since 2016 over whether Swisher defaulted on its obligations under the contract. Its witnesses admitted so at trial, as Judge Selma found in his post-trial order. Judge Selma continues to find, these are the orders under review, that Swisher shorted Trendsetter 200 million cigarillos through its conduct. He also finds that that breach of contract predated- Right. And I agree with you on that. So let me ask you this about the sanctions, no, the fee award. Was that for the, did that exclude fees for the antitrust claim and for the two years that Judge Selma found you had a meritorious claim? It did not. That fee award to Swisher included all of the time that it spent on the contract claims where it, and again, it simply was not, it had not proven that it did not default. Everyone agrees that it did default. But I want to go to the second reason why we had not appealed the fees award at the same time we appealed Trendsetter 2, and that's because the district court had told us in two separate orders that if we win on appeal, the fees award to Swisher would not be enforced. Yeah, I know that, and they also conceded that, hello? Well, and so it's crucial to recognize that those statements by the district court, they were not merely offhand statements or idle musing, and let me explain why. The context in which those statements were made was that when we voluntarily dismissed in 2020, Swisher moved for fees as a prevailing party, that's fine. But we saw this issue coming, and so we had filed a motion to stay in the district court so that the adjudication of prevailing party fees would wait until after Trendsetter 2 until we found out. Why did Judge Selna proceed with the attorney's fees motion while the appeal was pending? Well, he denied our motion to stay, and this is very important. In Swisher's opposition to that motion for stay, Swisher told the court that Trendsetter would not be harmed by a prompt adjudication of the fees. And I want to get these words exactly right, this is at ER 132, when Swisher was discussing in opposing our motion to stay a potential reversal of fortunes, it wrote, if that unlikely event ever came to pass, that is a reversal, Swisher would, of course, return the money judgment to TSI. So the district court accepted Swisher's argument, and then it wrote in its order denying our stay, and this is at ER 121, if Trendsetter is successful on appeal, this order would not be enforced. Now, Swisher making that argument and succeeding in that argument, that is the very definition of judicial estoppel, and I think you saw, well, in Swisher's red brief and then in our yellow brief, Swisher made no argument whatsoever as to why that does not work at judicial estoppel. The other very important thing here is that when denying our 60B-5 motion to vacate Swisher's fee award, the district court avoided addressing either its own prior commitments or Swisher's judicial estoppel by entirely ignoring those issues. Those were a cornerstone of our motion to vacate, and the district court did not address them at all. So even if we suppose that there is some, and I think Shalala doesn't leave any room for this, because it says an appeal would be a meaningless formality, but if we assume that there is some discretion or equity involved in a decision of whether to- Don't we review this for abuse of discretion? It may be abuse of discretion, but it would be an error of law, and of course an error of law is an abuse of discretion. I would say that if there is any discretion or equity involved, it is the height of inequity and abuse of discretion for the district court and the opposing party to mislead a litigant by saying that a certain thing will happen if they win on appeal, and then when they do win on appeal, the litigant and the district court essentially saying, well, I didn't see that coming, never mind, I'm going to do the same thing anyways. And of course, this goes to the same, let's call them equitable considerations. If the district court had, back in 2020, said, I'm awarding fees to Swisher, and no matter what happens on appeal, I am going to maintain that fee award to Swisher, then of course we would have filed a separate appeal, even though Shalala says we don't need to. And in Trendsetter 2, I have to presume, this court would have recognized that the fee provision is governed by substantive Florida law, and Swisher does not disagree with the fact that substantive Florida law is 100% uniform where there is a reversal on appeal, the prior fee award just absolutely must be vacated. So I just, I want to end on this thought with, you know, particularly when everyone agrees this would be the first case in history to refuse to conform a fee award to the ultimately prevailing party. It would be all the more extraordinary for that to happen on this record, where both the district court and the opposing party had said that the fee award would conform to the appellate result. Now I want to address next the district court's award of $4 million in bad faith sanctions under the district court's inherent authority. And I want to focus on the finality issue, which is that because Swisher knew of this potential bad faith fees motion back in 2020, in fact previewed it, it needed to file that and have it decided by the district court so that it could have been addressed at the same time this court decided the propriety of the fraud on the court sanction in 2022. But instead, here we are now three years later, arguing over the exact same body of facts that was at issue in Translator 2, just under a new legal theory. Does it make any difference to you that the district court, when it dismissed the case, retained jurisdiction and said that, it maintained jurisdiction over the case and it said that the dismissal order was conditional and it set forth several conditions? That's unlike other cases. So that is a difference, but I want to focus on what the district court was contemplating there. And this is at ER 149 within its order granting a voluntary dismissal. It did not say that no matter what happens, Swisher can bring a bad faith fees motion on the same record. It specifically said at, again, ER 149, any motion pursuant to 28 U.S.C. section 1927 and perhaps others would be informed by probing in greater detail conduct amounting to fraud on the court. Should the Ninth Circuit affirm, it didn't exactly, but the court is likely to entertain post-judgment discovery in support of the various motions that might be brought. So it was contemplated that if there were a remand from trendsetter two, Swisher would be entitled to take further discovery if it discovered new facts that warranted relief under 1927 bad faith, that it could present those in a motion. And that would be perfectly consistent with the rule that we're urging because obviously there are many instances, Goodyear would be one of them, where a case will go to final judgment and then it's only later when a party learns its basis for bringing some sanctions motion, then it's permitted to bring it. The rule that we are urging is simply that when you know the entire basis for various theories of sanctions, you could present those all in one motion. Here are all the facts. Trendsetter is liable, well, the verdict should be vacated for fraud on the court. Trendsetter is further liable for bad faith, we should receive attorney's fees on that. Trendsetter is further liable for 1927. They've also previewed a rule 37 sanction and more recently rule 11 sanctions. All of those could be presented in one motion, could have all been decided in 2022. Now this is just, this is no different from the common law rule against claim splitting by a plaintiff that is universally recognized and followed, that where you have one set of facts and perhaps multiple legal theories for relief, the other side owes you money because of those theories, a plaintiff always has to present all of those theories at once to have it embodied in a final judgment and one appeal. Am I correct that Judge Selma adjusted the award of sanctions to not be duplicative of the award of attorney's fees? He did. And I think, I don't remember the exact number, maybe there was $2.4 million in overlap. If we were to send it back, would he be free to alter the sanctions award to reflect no attorney's fees? I don't know that it would need to be altered. If you vacated- But you're asking for both to be reversed. So wouldn't it be within his discretion on remand to alter the amount of the award? I think he could. So if we reverse the fees award and then just the bad faith sanctions were standing, it would still be that $4 million because we don't dispute that if bad faith fee shifting were appropriate, it would be the entire amount that he had awarded as bad faith fees. I don't think there would be, I mean, we could, it could be left to him to decide whether to add any additional bad faith sanctions, but he went through in the sanctions order very thoroughly each of Swisher's categories of time and parsed out what could be attributed to the supposed bad faith conduct. Now, I'm sorry, before I sit down, I do want to address the interest point, which is that, again here, the district court erred by allocating interest, dividing line between pre and post judgment interest in favor of Swisher. AT&T and Planned Parenthood, they simply set forth a rule, and I'm quoting, equitable principles favor selecting the judgment which more fully compensates the prevailing party. Now, here the district court declined to follow AT&T by saying, this is an ER 13, the facts of this case reveal an important distinction with AT&T. But as we explained in our blue brief, that's just absolutely wrong. As the preceding, the unpublished AT&T opinion explained, in that case, the plaintiff had won an arbitration award, went to the district court to have it confirmed, the defendant filed a 60B3 motion, the same as here, to have that arbitration vacated for fraud. The district court vacated it for fraud, it went up on appeal, and now this is in the unpublished opinion. This circuit reversed, not by finding that the fraud hadn't occurred, it reversed by finding that the defendant hadn't been diligent. The same kind of, if we can call it a technicality, the same kind of technicality here. The Ninth Circuit reinstated the arbitration award, the district court allocated interest in the way that favors the losing party, and this court reversed. So AT&T and Planned Parenthood, there's no, they have already decided how the equitable principles cut, and they both use the exact same language, that the equitable principles favor the prevailing party. And I would finally say on those issues, that AT&T... What do you take to be the center of review? Well, that's just where I was going. Both AT&T and Planned Parenthood say that the review of this dividing line is de novo, because the question is when post-judgment interest attaches. They both say de novo. And I do want to reserve the balance of my time. Thank you. Do you see... Good morning, Your Honors. Theodore Boutrous, representing Swisher. I would like to reserve five minutes for rebuttal on my cross-appeal, and I'll keep an eye on the clock.  I'm going to start with our cross-appeal, because I think it puts this case back in perspective. If you're listening to counsel today, you would have thought this was a garden variety dispute over interest and fee shifting, but the fees, the contract damages they're seeking to take home, and the interest on that contract damage award, and the fees they want for litigating the contract claim, all are predicated on the egregious tax fraud and the criminal evasion of taxes. As judge... I think we have to look at Judge Selna's orders on the sanctions and on the fees together, and he was very careful. He got everything right, but one legal issue on the cross-appeal that actually simplifies the case, if you agree with us, because then you don't have to even address this question of the contract-based fee award. The issue I want to focus on at the beginning here, Your Honors, is the court... The only legal error Judge Selna made was that he did not give us, in his words, a blanket award for the fees that started at the beginning of the case. And the reason is, the district court, we respectfully submit, misinterpreted what the Goodyear court meant by a case being initiated in complete bad faith. There's no question that this case was initiated in complete bad faith if we apply the correct legal standard. So doesn't this argument depend on the imputation of what Mr. Al-Harib knew to other people within TSI? No, Your Honor. He was the CEO. He was the key witness in the case. They introduced him as the client. They said that he was like the party to the case. He was TSI. And this court, in its prior opinion, they made the same argument, that you couldn't impute his knowledge to the company. And it's the company that's being sanctioned here. It's TSI. Not the lawyers. It's the company. He was the CEO. And as Judge Selna found, and as we've laid out, it goes back to, you know, it's bedrock law, and this court's ChinaCast decision. The CEO's knowledge and intent is imputed to the company. Well, didn't, I mean, he did not begin this export, I mean, the import excise tax fraud until some point later than the events underlying this lawsuit, right? In 2013, before the lawsuit was filed. And it began, and as the district court found, I think this is really key, Judge Warlock, he found that without such fraud, the tax evasion fraud, and this was serious. This is brazen federal tax evasion. The guy knew they weren't making profits. He confessed they wouldn't have been able to compete in the marketplace without the  But here's what Judge Selna said, without such fraud, Trendsetter likely would have gone out of business by early 2014, because it would have been forced to increase prices or shut down completely. That's before this lawsuit was even filed. So if they had not engaged in the tax fraud, this case would never have been filed. That's a factual finding by the judge, and it's consistent with what this court held in Trendsetter, too. I'm a little confused, because he also found that Smithshire breached the contract by not delivering 200 million cigarettes or something. He didn't find that we breached the contract. This is crucial to our argument. He found that they could have made a claim that there was a breach of contract on the 200,000, whatever it was, the undelivered product. That they could have made a claim. Counsel? Yes. How does the reinstatement of the breach of contract verdict affect your argument? So on the cross-appeal argument, it affects it this way, that if you agree with us that we can get fees from the beginning of the case for the whole case, because it was initiated in bad faith or in the district judge's language, the fraud was grafted onto the complaint from the start. That's at ER 41. Then this court wouldn't have to even address the contract fee award to Swisher, because it would be encompassed in the approximately $20 million fee award we believe we should obtain. But if we don't accept that argument, then do you agree that the district court should have backed out those attorney fees? A, we believe that he correctly exercised his discretion to not take away the fee award on the breach of contract that was unappealed, that counsel forgot to mention. They didn't appeal the fee award, and the 60B analysis of whether that fee award should be vacated is at the heart of equitable discretion. And the judge exercised his discretion. This is an extraordinary case, he's right. No other case has there been a fee award awarded to one party where the contract claim ended up being reversed on a technicality. But everyone agrees the damages, the contract claim, is infused with the same fraud. The judge found that. So we believe the judge exercised his equitable discretion correctly. He said in his fee decision on the contract claim, bad faith abounds, the trendsetter's tax evasion was extraordinarily improper. And then he said, and I think we just need to keep this in mind, because it's really the heart of the case. They're asking this court to give them more money than the approximately $10 million of fake phantom profits that have been found to have been the product of tax fraud. It's pretty audacious. And here's what Judge Selinan said. This is page ER 16. The verdict was thus based on a profit, this is the contract verdict, was based on a profits calculation manipulated by the fraud of trendsetter's CEO. And he found that the contract damages are, quote, just as susceptible to interference from Al-Rahib's fraud as the antitrust claim. So they're here saying, we're not satisfied that we get to take home $10 million that's fake fraudulent profits. It's an affront to justice just that they're going to get to do that. And we have the issue of the timing, the technicality that this court reversed on. We respect that. But where Judge Selinan went wrong, now I'm back to our cross appeal, is he found that because they could have, this is your question, Judge Warlock, hypothetically, in good faith back in 2014, brought a case that was just a breach of contract case that didn't depend on the fraud, that meant that their case wasn't brought in complete bad faith. But that's not the test. In fact, it's worse, it's worse. If they had a legitimate claim that they could have brought and elected to bring this false lost profits claim, they only brought a lost profits claim, Al-Rahib confessed that they could not have competed, they couldn't have profited at all if they hadn't engaged in the tax evasion. Yet they came into this court, into the district court, seeking tens of millions of dollars of lost profits that Al-Rahib, the founder, the CEO, the brains behind the operation said knew was the product of pure, unadulterated tax fraud. And so under Goodyear, there are two bases for saying we should get our full fees. One, the fraud was grafted onto the complaint from the start, which was a factual finding by Judge Selma. Two, Goodyear also made clear that if a party had, if failed to disclose information, which had it been disclosed, would have been fatal to its case, the court may award fees from that point on. And here, if they had disclosed, if Al-Rahib had disclosed to these lawyers in 2014, before they filed the complaint, that these lost profits are a complete product of fraud, they would not have filed the case. They couldn't have. It would have been a Rule 11 violation, arguing for lost profits. If they had disclosed it in their Rule 26 disclosures to us, when they filed the complaint, we are engaged in massive tax fraud, we don't have any profits other than the, that are a product of this fraud, the case would have been killed. It would have been dead. And so under Goodyear, the district court could back it up and give us our full fees. And then on the contract claim, the judge thought, viewed, he was being very careful, and again, he put in immense work on this, and we greatly appreciate it. He was following this court's mandate, reinstating the contract claim, and therefore we were not awarded any fees for all the litigation relating to the contract claim, which was based on the same fraudulent activity. And we think that under Chambers, under Goodyear, the inherent authority is meant to really fill in that gap, where the technical rules gave them back this $10 million. The judge could say, well, you still, we still should get fees and sanctions, because that claim was fraudulent too. Well, are the sanctions award and the attorney's fee award duplicitous? If we receive the fees all the way back to the beginning, which is about $20 million as of the time we were before the district court, yes. In the court, we would not be then, we would say the court doesn't even have to, that moots the issue of whether the unappealed fee award under the contract to Swisher must stand. That would be deducted, because it's encompassed in the $20 million claim. That's why I think it simplifies it for the court. If we went back to Judge Selina, if this court made clear, the fact that- I'm sure he's not going to be very happy to get this case back. I think- He's done so much work on it. He's trying to get it right and exercise his equitable discretion here. And this is really an important issue for the judicial system. The way I look at it, and I think this is really indisputable, Mr. Al-Rahid engaged in this brazen tax fraud in the 60B order. Judge Selina quotes it at length back at the supplemental excerpts of record at page 19, that he said it was a game. He heard that his importer had a scheme going, and he said, I want in on the scheme. So he- That was bad, right? That's bad enough. He engages in this tax fraud scheme. He then decides, that's not good enough. Let's go to the federal courts and try to double our money, essentially. Let's try to get another $10 million. The disgorgement for the tax fraud was about $9 million. They're going to get that back here. He's going to get away, from a monetary standpoint, with the criminal tax evasion because the courts are- Our courts are going to give him back the false phantom profits. And I think Judge Selina was trying to balance these issues and get to the right place with his complicated procedural posture, which, by the way, is not Swisher's fault. It's TSI that appealed prematurely, filed multiple efforts to appeal after the fraud was relieved, filed a mandamus petition, dismissed their own claims with prejudice, and we went up. And then they are appealing now. So- But what I think Judge Selina did is he balanced, he was responsible for each set of delay in his pre- and post-judgment interest award. So he kind of balanced the odds for the-  He did. He was trying to get to the right place with the equities here. And our only point is the simpler path and the legally correct path. And I think on interest, he got it right. The cases that AT&T and the other cases, they don't say it's automatic. They say if the delay is occasioned by the losing party, you go with the pre-judgment interest that will give the winner the most money. Well, of course, Judge Selina said that would be- that would upend AT&T to give the fraudster more money because their fraud was revealed and we had to litigate it. So he exercised his equitable discretion there correctly. Likewise on the fees, he was trying to come up with a way, as he pointed out, he felt that he could, in his words, reel the issue of our contract fees back in under equity to say, those fees we incurred battling the fraud on those very damages. So he did it that way. But I think the easier way, Your Honors, is to say this was, as the district court found, as this court already found, a scheme that was- it's like the sorted scheme discussed in Chambers and Goodyear that started at the beginning of the case and permeated the entire case. This was all about lost profits. We didn't concede we breached the contract. They've been saying that all along. Of course we didn't concede that. We were going to- about to launch all sorts of attacks on the contract claim based on fraud and the inducement and then they- we had discovery before they appealed and they ran for the hills. They didn't want a new trial because they knew they couldn't win this case with their CEO having engaged in this fraud. If they had gotten those extra cigars that they say they should have gotten, they couldn't have sold them at a profit because they- the excise taxes were included there and El Rahib admitted they couldn't compete without the tax cheating. So I think that on these issues- and again, just back to the- our fee award on the contract claim, Judge Celna got it right. This is a discretionary issue. California Medical says it's not automatic, it's an equitable, extraordinary thing to open up a judgment and nothing that was said in the proceedings running up to this at all misled them. They knew we were going to try to keep that award. They knew we were going to file a sanctions motion after the second appeal. It was very clear, Judge Worley, as you pointed out, the judgments- you can't read it any other way than that he was reserving, retaining discretion on those issues. So we proceeded exactly down those lines. So I will pause there and maybe retain the rest of my time for the rebuttal on- just on our cross-appeal. Thank you. Thank you. Judge Whitlaw, let me touch briefly on a point. You observed that question of whether bad faith can be imputed in a- as it is in a normal corporate context. The only two cases to have addressed that, Walters Kluwer v. Syvantage from the Second Circuit and In re Moore from the Fifth Circuit, have held that in the context of bad faith, it cannot be imputed. I'm not sure I was in advance to any reason to- Yeah, why- I've read those cases, but I'm not persuaded on- why is it just sort of common sense that the bad faith of the CEO that permeated every aspect of what the company then did should be imputed to the company? Well, I'll stand on those cases, but I do want to address- They're not binding on us, correct? They're not binding on the Ninth Circuit, no. But- and this goes to the core of Mr. Boutros' argument, the argument that this case never would have been filed had the fraud been known about. That is absolutely wrong. The- mind you, the excise taxes were avoided only on the subset of cigars that were imported from the Dominican Republic beginning in 2013. Our complaint- and we've explained this in the yellow brief at pages 7 through 12 with undisputed factual record citations. Our complaint concerned solely the Swisher-made cigars. There was no relevance in this case whatsoever of the Dominican Republic cigars until our expert came along in December 2015, this was 14 months after filing, and he developed the damages calculation whereby damages would be calculated by mixing the profitability awaited average of the Dominican Republic cigars with the Swisher-made cigars. And I would further point out the- That has nothing to do with the question that you were addressing a minute ago. Oh, not with the imputation, no, Your Honor. I was addressing whether- the question of whether the tax evasion permeated the case from the beginning absolutely did not, and only arose on account of this methodology developed by the expert over a year after the case had been filed. On the blanket award issue on the cross-appeal, Judge Salna made many factual findings. These are at ER-141- I'm sorry, ER-41 about, for example, he writes, of course, the jury could have awarded Trendsetter some measure of damages, this would be on the Swisher-made cigars. He writes that the jury could have awarded damages only for the portion caused by the anti-competitive conduct, or no damages at all. And then he ends up- he doesn't give any indication that he feels bound by what happened in Trendsetter 2. He writes also at ER-141, or ER-41 after making those factual findings, he writes, accordingly, the court declines to make a blanket award. He just exercised his discretion not to make a blanket award for the reasons that are set forth based on the law in lieu of the United States quoting Goodyear. I want to close by saying this. Every argument that opposing counsel just made could have been made to this court in 2022 in Trendsetter 2 had Swisher teed up this additional theory for why that bad conduct means that Trendsetter owes its money. All of this could have- it should have been avoided, and again, for the same reason that we don't allow plaintiffs to come up first on their contract claims, then on remand say, oh, you know what, actually, that was fraud, and so now we want to pursue the same set of facts under a theory of fraud. And that's, Your Honor, is where I will close. Thank you.  Thank you very much, Mr. Powell. Let me start with ER-41 and 42, since counsel mentioned them, because, first of all, it's very clear that Judge Selma felt- Which order is that? Pardon me? Which order? That's the sanctions order, Your Honor. Yes. And it's very clear, if we look at that order, that on ER-41, Judge Selma is talking about the fact that it's a legal conclusion, that the case was not brought entirely in bad faith, because they theoretically could have brought a good faith case. And as I said, that's just legally incorrect. And the Stenson case that we cited from the Tenth Circuit, very recent, very similar. The plaintiff engaged in fraud to concoct damages information from doctors. It was a real car accident. And then went into court, and the Tenth Circuit held, well, even though there was a car accident and the district court let the case go to summary judgment, the fact that the whole basis for damages and injury was a fraud meant fees could go all the way back under Goodyear. The second point that counsel made was that court did not make any sort of finding that the mandate of this Court constrained them. On ER-42, at the top of the page, let me just grab that. The Court said, actually, it's ER-44. The Ninth Circuit has mandated that the jury's verdict on the breach of contract claim be reinstated in its entirety. Because Trendsetter is entitled to recover this damage award, the Court concludes that Swisher is barred from recovering a sanction award based on the contract claim. And we respectfully submit that's just error. This Court didn't make any commentary on sanctions. And this Court's decision in Fink, the Stenson decision from the Tenth Circuit, the basic inherent authority says that if someone has a claim, even if they have a non-frivolous claim, but they engage in bad faith, bad behavior from the outset of the case, you can get your fees all the way back to the beginning. That's what happened here. On this question, first of all, counsel suggests they really did maybe have valid claims and they could have brought this case based on the Swisher cigars. But the problem is they had the opportunity. I think this is really telling. They could have gone back to trial and had a clean, clear trial without the fraud. That's what the judge ordered. And they said no. That hammer was dropping on them. We had discovery. We had a contempt motion. They were withholding all their information. We were drilling down on the fraud. And they, of course, said, well, we don't want a new trial on this. This is going to be a disaster. The other thing is our expert, Dr. Cox, testified that in terms of the shortages that they claimed, here's what he said. These alleged shortages and lack of deliveries could not have damaged TSI. TSI's tax fraud hid the fact that there were no legitimate economic harm from the alleged shortages of delivery of Swisher product and thus no basis for the award of damages. That's on ER-191. And then if you go to the prior page, he talks about the fact, he had a chart where he backed out the tax evasion and found that in 2012, even under their expert, 2012 was when their damages period started, their expert, McDuff, admitted they suffered a 44% loss, which would have gone to 55% if you count excise taxes. 2013, they had a small margin, gross profit margin. That's when the fraud started, and we were trying to get discovery to really find out when, but we didn't get it, of 2.1%. But our expert testified that if you added in the other costs, fixed costs, they would have had almost assuredly had a negative profit margin in 2013 as well. So the notion that they had this great claim, A, is irrelevant. If they had, they should have brought it. They shouldn't have brought a claim tainted by fraud, grafted it onto a complaint from the start. And it's interesting to go back and read the complaint now when you know the real facts. This story of the poor entrepreneur who could have made all these profits, it's all about lost profits, and it turns out, no, it was all a fraud. The profits were all the product of fraud. I guess the other point I'd like to make, again, maybe I'll just close with this, is that they are asking this court to not only give them the $10 million of phantom profits that this court and the district court have all recognized were the product of their tax evasion. They want more interest on that, on their illicit profits, and they want to get a fee award for litigating it in the Ninth Circuit, in the district court. That would be an affront to justice. This court should reject it and hold it. Swisher should be able to get its fees from the beginning of the case because the fraud tainted the case from the very beginning. Thank you very much. All right. Thank you, counsel. Trent Seta v. Swisher will be submitted, and this session of the court is adjourned for today. Thank you. Thank you all. All rise. This court for this session stands adjourned.
judges: WARDLAW, RAWLINSON, Rakoff